All right, the next case we'll hear is United States v. Milam. Ms. Dagger, you can Good morning. May it please the Court, I'm Kelly Margolis Dagger, counsel for the defendant appellant David Craig Milam. This appeal arises from the government's failure to produce a search warrant that was the basis to search Mr. Milam's home. The search of Mr. Milam's home yielded critical evidence, the most substantial source of evidence in this prosecution, three prosecutions, two that are at issue, and Mr. Milam's motion to withdraw his bill of rights. The government produced only every other page of the search warrant and the supporting affidavit. The resulting document, and that document's in the joint appendix starting at page 116, it makes no sense. The numbered paragraphs aren't consecutive, and the narrative is obviously incomplete. It skips. Anyone, lawyer or non-lawyer, who reads that document can tell that it's incomplete. But what happened in this case is that no one read it. The government apparently didn't read it when it produced the search warrant and affidavit. Could a defendant plead guilty without receiving discovery in a case? A defendant could plead guilty without receiving discovery. Is that ever done? It is certainly done, especially in the case of a defendant who agrees to plead guilty to an information. And where's the evidence in this case that this affidavit was at all important to the defendant's decision? So Mr. Milam, upon discovering, approximately three years after the affidavit and the warrant were first produced, Mr. Milam had new counsel. His new counsel immediately noticed that the warrant and affidavit weren't complete, and he asked for it. We know all that. We know the affidavit. Somehow the copying only copied every other page. But my question is, what evidence do we have that Mr. Milam relied at all on affidavit or the search in order to plead guilty, and whether he would have pleaded guilty anyway? Your Honor. It looked to me from the record that he was very anxious to plead guilty, more anxious than we've ever seen in a record. Isn't that what the evidence shows? Your Honor, the defense counsel at the time did testify at the hearing on the motion to withdraw the guilty pleas that Mr. Milam was anxious to plead guilty. Not only that, she went over various defenses and ideas, and he didn't want to hear them. She said she'd never seen anything like it. He was just anxious to plead guilty. And what you take from the record is what he was trying to do is to cabin his losses, cabin his responsibility to the firearm charge and avoid other exposures. Isn't that really the conclusion you reach from those facts? That's what defense counsel's testimony was. Now I'll note the court below said it wasn't relying on defense counsel's testimony. And I think there's an important reason not to rely on that testimony. The defense lawyer did testify that she attempted to advise Mr. Milam about suppression issues, various defenses. And as Your Honor, Judge Niemeyer pointed out, she also testified that he was insistent on pleading guilty and doing that quickly because he thought he might be able to avoid worse things to come. Well, all that being true, what are the deficiencies in the full search warrant upon which you file a motion to suppress? I mean, is there anything in there that would help your client? Yes, Your Honor. Thank you. What would that be? So there are two things. The first one is really an issue of the lack of nexus between the suspected criminal activity involving drugs and the location to be searched, which is Mr. Milam's home. The second thing is, and this is sort of a sub-issue, there's a potential franks issue with one of the statements, at least one of the statements in the search warrant affidavit. So the search warrant affidavit essentially says, the affiant says, first of all, I know David Milam to be an Aryan Kings gang leader, and I know the Aryan Kings to be a gang that is known for drug trafficking and violent conduct. There's no indication in the warrant affidavit of how the affiant came by that information. Did it come from a cooperator? We know that's true, right? We know, in fact, he is a member of that gang, right? We know those facts to be true based on his guilty plea. We know that, you know, based on his guilty plea, of course, the guilty plea did not include as an element of any of the charges participation in a gang. This is an Arrico case. He did plead guilty to drug and firearm crimes. Based on the evidence. I'm not asking you to concede it, right? I understand he's your client. But, like, we know those things to be true. Just accept for a minute that they are true. How could that be a Frank's problem? The Frank's issue, and I'm sorry, Your Honor, I haven't gotten to the Frank's issue yet. So let me skip to the end and say, toward the end of the search warrant affidavit, there's a comment from the affiant about a search of the car that Mr. Milam was driving and finding a bag with, quote, a large amount of cash, marijuana, and packaging material. And there's no punctuation in that part of the warrant affidavit. But what I understand to be a large amount of cash, marijuana, and packaging material is a large amount of cash. It's two grams of marijuana. It's a user amount of marijuana. And I think that's a critical difference here. How much cash? $14,000. $14,000. And packaging, how much packaging? There's no indication of how much packaging material there is. But there's no dispute that there was packaging. That's shown in the return, right? The record below does not clearly show what the discovery was on the packaging. The only point I'm getting at here is Frank's is a very serious charge. It basically says that an officer deliberately falsified an affidavit or was so reckless that it amounted to deliberate conduct. And that if you take out the Frank's material, was there still probable cause? And it seems to me both areas are not even close in this case. I mean, there's just no evidence that this officer was acting as a rogue officer. There is no evidence of that because there was no suppression hearing and there was no opportunity to even attempt to explore a Frank's issue. Why are you raising it if there's no evidence? I mean, you can't just throw it out there. You've got to have some. You're arguing that because there's a potential Frank's hearing, it was meaningful that this affidavit wasn't complete. But you can't make that argument unless you've got some evidence. You can't say, oh, I would have looked for that. Well, my focus here, Your Honor, is on one of the more factors, the fourth more factor, and that Mr. Milam was denied the close assistance of competent counsel at the time he entered his pleas. The counsel went through in detail about how she worked with him. She was a professional. She was an experienced professional. And she said, never seen anything like it. He didn't want to go over those things. He just wanted to plead guilty. And he did plead guilty, and his guilty plea was accepted. And now you're saying that the affidavit, absent portions of the affidavit, had he had his counsel received those pages, he wouldn't have pled guilty. But we don't have any evidence. And then you say, had we had those pages, we could have done a Frank's hearing. There's no evidence of that. I mean, it's, you know, you can only go so far in this, in these suppositions where you speculate. There's got to be some evidence to suggest he would not have pled guilty had the affidavit been complete. And to be clear, Your Honor, Mr. Milam's argument is that the district court committed error in denying his motions to withdraw, his motion to withdraw his guilty pleas. And he did say, in support of those motions, that it's not just if he had had the missing pages of the affidavit, but if he had had the advice of a lawyer who had looked at the affidavit, then he would have made a different decision. He would have appraised the prosecution's case differently and decided to plead not guilty. Can I ask a slightly different question back to your Frank's argument? What's the best authority for the suggestion that this type of Frank's issue that you've identified would be entitled to a hearing? I mean, we have a pretty high bar for saying you don't get to just say that I've managed to read this, like, grammatical sentence in a way that might be mildly misleading. Right? We set a pretty high bar for a Frank's hearing. Why do you think that if this was what you were pointing to, that you would have been entitled, you, your client, would have been entitled to a Frank's hearing at all to inquire about it? I mean, it seems to fall well short of what we've said. The evidentiary showing is required to even get a hearing. Your Honor, that one detail about the discrepancy in what the search warrant affidavit says and then the amount of marijuana is the only thing that's of record that I could tell this Court that I would say that could point in the direction of a Frank's hearing. But again, the issue here, we're dealing with an undeveloped record necessarily because there was no suppression hearing, there was no exploration of whether there was a basis for a Frank's hearing. And there's an important reason that the district court did not rely on defense counsel's testimony about having purportedly reviewed all this stuff with her client. And that's because she couldn't have done that. Anyone, even a non-lawyer who read the incomplete search warrant and incomplete affidavit would have known that there were pages missing. And so although the counsel did testify that she believed she'd reviewed everything carefully with the defendant and he had said, no, no, no, I'm not interested, that can't be the case. She couldn't have done that or she would have raised her hand and said, wait a minute, this is an incomplete search warrant affidavit, is there a basis for a suppression motion? Let me ask the assistant United States attorney for the full document and then assess that. And in this type of case where there is such a wealth of information. So your view is it's effectively, you would have us adopt the rule that unless and until a lawyer has reviewed all discovery, it's ineffective assistance to permit that defendant to plead guilty. I would not, Your Honor. And I act as district court appointed counsel myself in a great number of cases and I have cases that have hundreds of thousands of documents. But in this case, this is a case where we're dealing with drug and firearm charges that arise from, and I can't say they arise exclusively from, but there is at least a wealth of incriminating evidence, physical evidence that arises from this search warrant. And so although it may not be ineffective assistance of counsel to fail to review the 30 hours of full camera footage, I do think in this situation that yes, it's ineffective assistance of counsel not to review what is likely the only valid defense in a case like this one, where the client has been caught with the guns and drugs in his home. I mean, it's essentially, it's not maybe quite as bad as the case. So when a client comes to you and says, I need to plead guilty because they're going to find that I've got a whole freezer full of bodies in my house. And so I want to go ahead and get them, like, distracted by something else. Your answer is that a lawyer has to say, nope, can't do that. Right? First, don't tell me about the bodies in the freezer. But second, I'm going to need to go do some research on this motion to suppress despite your desire to enter a plea at their arraignment. I can't say yes to that, Your Honor. And, of course, that's an extreme case. Defense counsel didn't elaborate on, in fact, she said at the hearing below, she wasn't sure exactly what it was that Mr. Milam was concerned about. I don't know what he was concerned about. I agree that these situations are very fact-specific. There isn't and should not be some kind of right-line rule that defense counsel has to do this in every situation. But we do know here there wasn't a strategic decision after thoughtful discussion not to pursue a suppression motion. Wait, why is that? Why wasn't it a strategic decision after maybe you think it's not thoughtful? I don't know this lawyer. I'm not trying to impugn them in any way. But whether it's thoughtful or not, like, there was a discussion, right? He said, I need to plead guilty because of the freezer or effectively the freezer. And, you know, the lawyer says, listen, I tried to go over the stuff with him, but he said he needs to do it now. Like, that seems like a purely strategic judgment to say, okay, I'll let you go ahead and plead guilty rather than spending, you know, the next month researching a motion to suppress, which you said you don't want to file. So I think about a month passed between the time that the incomplete warrant and incomplete affidavit were produced and the time of entry of the guilty plea. And in that time, some discussion occurred. The district court did not accept that testimony. The district court didn't discredit it but said it wouldn't rely on that testimony. And Mr. Milam's contention is that that review could not have occurred because if his lawyer had so much as reviewed the affidavit, she would have said, where's the rest of it? Whether she was going to file a suppression motion or not, she would have said, where's the rest of it? The premise there is that when I skim through discovery and I see affidavit, that, like, if I don't stop and notice the numbers are off, that, like, that's, like, we can't believe that a lawyer would do that? I mean, you've reviewed enough discovery. Like, can you really say with a straight face that, like, it would be impossible for someone to have flipped through this and not noticed that the affidavit was missing every other page? So it would not be impossible for someone to flip through it and not notice, but it would be impossible for someone to actually read the affidavit and not notice. And your view is that absent sufficiently careful reading of every page, they were ineffective? I see I'm over time. Can I have just a minute to address that question? Yes, please. Thank you. Absent sufficiently careful reading of the search warrant affidavit that gave rise to the search that yielded most of the really significant incriminating evidence, it's ineffective assistance in this case. Thank you, Your Honor. Thank you. Yes, and rebuttal. All right, now, Brown. Good morning. Lucy Brown from the United States, and may it please the Court, we apologize for the scanning error in this case, but the Court should affirm because the defendant has not met his burden on appeal. Guilty pleas are strongly presumed to be final and binding. The defendant must prove to you that the district court abused its discretion in denying his motion to withdraw. There are six factors to consider. He argues only two, and he prevails on none. First is that knowing involuntariness. There's sort of the rule of how you get a knowing involuntariness factor on your side as a defendant, and then a small exception. The rule is you have a deficient Rule 11 proceeding. That's the heartland of this inquiry. And the defendant has never even alleged that, nor could he. The transcript is fulsome. The Rule 11 colloquy was thorough. Well, I guess the argument goes something like this, is that in exercising my privilege to plead guilty, I did so voluntarily, but I did so following the advice of counsel, and I received inadequate. I later discovered I received inadequate support of counsel. Had I had the correct support, I would not have made that decision. So I think it goes not to the voluntariness before the court, but the voluntariness even engaging in the plea because of the advice of counsel. I understand that to be two separate factors that the defendant has brought, the only two of the six that he has brought. The first is a separate knowing involuntariness analysis, and I don't think that one hinges entirely on counsel. Counsel is its own factor, which I'll certainly address and be happy to. The knowing involuntariness, I think, is it is where she put this notion of perhaps a Frank's hearing. I want to clear that up just right out of the gate. The page that counsel is referring to, it's on JA 121. It was in the original disclosure. So that actually had nothing to do with the delayed disclosure. So I don't think that's properly even in that knowing involuntariness analysis. The knowing involuntary is did you have a thorough Rule 11 where you've completely advised, were you counseled there, did you have the court tell you the risk you're taking, did you make this decision knowing involuntarily. There is a tiny sliver of an exception for the most egregious of conduct, which I've never understood the defendant to be alleging below or here. So he doesn't plead the rule there. He doesn't plead the exception. He tries instead to bring this sort of, well, I was supposed to have this. And certainly that was our mistake. He should have had all the pages of the agreement. But that doesn't make this a knowing involuntariness claim. The counsel question is a separate prong. And to have that, the defendant has to show. Did the defendant file a motion for discovery here? I believe he requested discovery in the original firearm case, not in the drug case as that was pursuant to a criminal information. You know, this mistake is not going to make any difference in my mind, the outcome of this case. But this is the Eastern District of North Carolina. Can you tell me how this happened? Your Honor, I think this was a clerical mistake. It was an administrative mistake. My understanding is this document came in from law enforcement, double-sided. And it was as simple, as we've said below, as a scanning error. And we regret that mistake. We should have caught it. I think it was that simple. And I hope Your Honor has had an opportunity to read our latest 28J letter that references our petition for rehearing in another case where we lay out the measures that we have taken in recent years. This mistake occurred almost six years ago. I understand. And I precipitated that. And that's why I'm asking again. This is not isolated. We take these admonishments from the court incredibly seriously. And I hope that chart in the petition for rehearing shows the court how seriously we take these mistakes. And I understand the court's concern. I understand that we have been admonished by this court before. We are one of the largest districts in this circuit. And we do a lot of cases as a result. And we regret the three that have been acknowledged in that letter. We regret any instance where this arises. But we do hope the court sees that we take these obligations seriously and we've taken measures seriously to try and eliminate those. At bottom, this was a clerical error. And we regret it. But in this case, it does not afford relief to the defendant. As to the counsel component of the question that Your Honor, Judge Niemeyer, was asking about, the defendant hasn't even alleged what he would have to to get relief under that. He focuses on performance. And I understand that's a strategic decision by appellate counsel. But it's not enough, even if he shows deficient performance. Because he also has to show that he was prejudiced by that performance. He has to show that he would have gone to trial. And under this court's recent precedent in Mayberry from this past January, he has to show why he would have gone to trial. He has to get specific. He can't just leave this court guessing. And he doesn't provide that in this case. He does this sort of circular analysis saying, well, I moved to withdraw, so I must have wanted a trial. But that can't be enough. Or else that prong of the ineffective assistance factor would be meaningless. That can't be enough. And he hasn't even tried to plead the facts that would show that in this case. There's been a lot of discussion about the performance. I do want to reiterate, the magistrate judge below didn't decide it. The district judge didn't decide it. We haven't argued it here, because we don't have to, to prevail on this factor. But I do think page 369 does speak to what the defense attorney did. I think it's pretty similar to what Judge Richardson was suggesting. It says that she went through page by page. I think that's important, because I don't think she sat down and read everything as a total document. I think she went page by page analyzing what was on each page and making notes. And the page that was included in discovery, you can imagine someone flipping through, here's a search warrant, where's the part with probable cause? Okay, a car left this house, driven by a defendant, ran a stop sign, had heroin in the car, had $14,000, a large amount of cash is what it says, a large amount of cash in the car, had marijuana, had packaging material. I think this sentence is unfortunately a comma mistake the defense counsel was referring to. I used to teach high school English. Commas can be very important. I think that is the problem here. Well, I don't know if it's a problem, if it was produced. Well, certainly. It was produced, Your Honor. I think that's what opposing counsel is raising as the issue. I think commas would have solved that concern. I agree with Your Honor. It's not a problem. Thank you. I think that would establish that it was a large amount of cash, comma, marijuana, comma, and packaging materials. If the court is even close on these decisions, I don't think the defendant has met his burden. He's argued only two out of the six. He hasn't alleged the others that include things like his legal innocence. And I think the government has shown why he doesn't prevail on any of them, including specifically the two that he has argued. I'm happy to talk about acceptance of responsibility or sentencing if the court has any questions. Do you know what he includes as a signature block in one of these white supremacist letters? 88DC. I know what 88 stands for. Does the record tell us what DC stands for? My understanding is that's for David Craig, his first and middle name, so that's what he went by. And, yes, as Your Honor referenced in the hearing in the district court, it indicated 88 stands as HH Heil Hitler for the eighth letter of the alphabet. But I think DC is David Craig, his first and middle initial. At bottom, this is a defendant who pled guilty twice to fulsome Rule 11 colloquies with counsel to crimes he committed. He then made decisions in custody with drugs and assault that stood to undermine the benefit of those plea agreements. And when he learned of the government's clerical error, which we regret, he decided to see what it could do for him. That's not what a motion to withdraw is designed for, and we would ask that the court affirm. All right, thank you. Ms. Gage. Thank you, Your Honors. We agree that at the time Mr. Milam pleaded guilty, he did have the page or his counsel had the page of the search warrant affidavit that included the comment without the commas about the large amount of cash, marijuana, et cetera. To be clear, Mr. Milam's point, though, about that page is that his counsel hadn't read it. His counsel hadn't reviewed the search warrant and hadn't reviewed the search warrant affidavit when he pleaded guilty. And that's why he didn't plead guilty with an understanding of what defenses he might have to this otherwise very compelling, incriminating evidence that the search of his home had yielded. On the prejudice prong, Mr. Milam's argument is actually quite different from the argument that the appellant made in Mayberry and that didn't succeed. So in Mayberry, there was a motion to suppress that was filed. One of the arguments that the appellant in Mayberry made in support of his motion to withdraw his guilty plea is that there were certain specific items of evidence that he didn't have that he should have had, and he didn't say why he needed that evidence. He didn't say anything about it. Mr. Milam's case is quite different. What Mr. Milam is saying at its core here is that his lawyer didn't review the evidence that she did have. She didn't review this important piece of evidence and didn't determine that it was missing. And if she had done that, that he would have made a different decision about whether to plead guilty or whether to go to trial. And it's not the case that I can stand up here and say no. There has to be like a because at the end of that sentence, right? Like there has to be some reason, you know, I would have gone to trial because a motion to suppress was likely or plausible or something. It can't just be I would have done it because of information, right? There has to be a because. And so you agree with that part? I agree, Your Honor, yes. And so if we were to say, and I understand this is not your argument, if we were to say that the issue you've raised on page 121 is in no sense a Franks problem, I understand you disagree with that. But if that was true, do you agree the case goes away then, that you lose because on this particular argument? No, Your Honor. It doesn't rest necessarily on the Franks issue. There's also the broader issue that Mr. Milam would contend that the warrant affidavit as a whole, with or without a Franks issue, was insufficient to provide a nexus to the location to be searched. Okay. And if, again, I'm just trying to understand the framework, if hypothetically we thought that was wrong, that either taking the pages by themselves or as a whole, there's more than an adequate nexus. So, in other words, if we reject those two substantive arguments, the because language, then the claim fails. I'm still going to tweak that a little bit. And if I could say it back to Your Honor this way, I don't think Mr. Milam necessarily has to show this Court that he would have won a suppression motion. So the district court said it. That's why I said it's likely. There has to be some likelihood, right? That's right. It's not laughably bad, which maybe these fall into the laughably bad bucket, but I just was trying to say, like, if they, if we reject those as likely possibilities, then it fails. I think that's right, Your Honor. I don't think Mr. Milam has to show that he would prevail on a suppression motion. I do think that if the Court were to conclude, for example, that a suppression motion would have been frivolous. I thought if he thought he could, I thought the question's a little beyond that. I thought even if he thought he could succeed and had a very good suppression motion, he could still plead guilty. I mean, your argument basically is that counsel wasn't well enough informed, not whether there was a Franks motion, and because the counsel could have pled guilty without any discovery. You agreed with that. Or the counsel could have had full discovery and not reviewed it yet and pled guilty. I mean, the facts is an interaction between the client and the lawyer and why the client chooses to do it. A client could say, I know I'm guilty. I want to plead guilty. I don't want to get trial. I don't want to put my family through it, and I've got some other matters that I don't want uncovered. I don't care what you got in your file. Now, that's all legitimate. So the question is we're asking here is he pled guilty, and he pled guilty with a charge. I mean, he really came in and, according to his counsel, he wanted to plead guilty from the get-go. And the question now is he says, oh, because of this affidavit that misses every other page, I wouldn't have pled guilty. And he does that, of course, later after somebody else comes in and finds that affidavit. I think we need to not lose the question before us, which is would he have pled guilty anyway based on this record? He has to demonstrate he would not have had he had full disclosure. And I see that my time has expired. May I respond? No, please answer that. Sure. Thank you, Your Honor. So I think the question isn't just would he have pleaded guilty if he had these additional pages. It's if he had had a lawyer who was competent and diligent and had read the search warrant, not every page of discovery, but this critical search warrant. Well, those are three different things. The lawyer probably was competent and diligent. The question is what stage of the proceeding were we? I mean, the lawyer could have thumbed through it quickly and seen every other page and saw things on those pages that were sufficient. I mean, that evidence is pretty damning that in his car that had left the home, they found $14,000, well, a large sum of money and packaging and drugs, and that he'd gone through the traffic violation and so forth. And that second car came out of the same place, too. But, well, I think we understand your point, and I think you understand my concern. Thank you, Your Honor. All right. We're going to come down and greet counsel again. I'll ask you after we come down if you'd join Judge Floyd.
judges: Paul V. Niemeyer, Julius N. Richardson, Henry F. Floyd